UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KAREN SINCLAIR, individually and
as Guardian Ad Litem for K.S. and J.A.,
minor children; and JULIAN AL-
GHAMDI;

               Plaintiffs,

    v.

CITY OF GRANDVIEW, a municipal
corporation in the State of Washington,
et al.,

              Defendants.

NO:  CV-12-3041-RMP

ORDER GRANTING IN PART CITY
AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

**BEFORE THE COURT** is a motion for summary judgment filed by

Defendants City of Grandview, Michael Akins, Kal Fuller, John Arraj, Rick

Abarca, Mitch Fairchild, Kevin Glasenapp, Travis Shepard, Seth Bailey, Robert

Tucker, and Therese Murphy ("City and County Defendants"), ECF No. 79.  The

Court heard oral argument on the motion.  Darryl Parker appeared on behalf of

Plaintiffs Karen Sinclair, Julian Al-Ghadmi, and minor children K.S. and J.A.

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

1   Kirk A. Ehlis appeared on behalf of the City and County Defendants.  The Court

2   has considered the briefing and supporting documentation, and the file, and is fully

3   informed.

4                                    BACKGROUND

5          This case arises from a series of investigations of marijuana growing in the

6   backyard of Plaintiffs' residence.  Detective Michael Akins sought and obtained a

7   warrant to search for evidence of drug trafficking in Plaintiffs' homes.  Officers

8   from the City of Grandview and a regional anti-drug task served the warrant.

9   Plaintiffs were arrested and the condition of their home was reported to child

10  protective services.  Plaintiffs Julian Al-Ghamdi and Karen Sinclair were charged

11  under Washington law with manufacturing a controlled substance and possession

12  with intent to deliver a controlled substance.  The charges against Mr. Al Ghamdi

13  and Ms. Sinclair were eventually dismissed.  Plaintiffs then brought suit against

14  Detective Akins and others alleging violations of their civil rights under 42 U.S.C.

15  § 1983.  Defendants now seek summary judgment on all of Plaintiffs' claims

16  against them.

17         The events relevant to Plaintiffs' suit began in the fall of 2008, when Officer

18  Kevin Glasenapp of the Grandview Police Department responded to a citizen

19  complaint that marijuana was being grown in the backyard of Plaintiffs' residence.

20  In the course of investigating the citizen complaint, Officer Glasenapp was able to

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

observe marijuana growing in Plaintiffs' backyard from the vantage point of a
public utility easement running behind Plaintiffs' home.  After observing the
marijuana, Officer Glasenapp made contact with Plaintiff Julian Al Ghamdi at
Plaintiffs' residence.  Plaintiff Karen Sinclair had lived at the residence with Mr.
Al Ghamdi since approximately 2001.  Minor Plaintiffs K.S. and J.A. also lived at
the residence.

Mr. Al Ghamdi confirmed to Officer Glasenapp that he was growing
marijuana in his backyard and produced a medical marijuana permit for Officer
Glasenapp.  According to Mr. Al Ghamdi, Officer Glasenapp instructed Mr. Al
Ghamdi to bring a copy of his medical marijuana permit to the Grandview Police
Department when his permit was reissued the following year.  Mr. Al Ghamdi
delivered a new copy of his medical marijuana permit to a clerk at the Grandview
Police Department when his permit was renewed in July of 2009.

Officer Glasenapp forwarded the results of his 2008 investigation to
Grandview Police Detective Michael Akins.  Detective Akins was a member of the
L.E.A.D. Task Force, which is a regional anti-drug task force comprised of officers
from local law enforcement agencies in Yakima County.

The citizen informant again contacted the Grandview Police Department in
the fall of 2009 to report that marijuana was being grown in Plaintiffs' backyard.
The citizen complaint was passed on to Detective Akins at the L.E.A.D. Task

Force for further investigation.  Detective Akins went to the area of Plaintiffs'

home within a few days of receiving the report of the citizen complaint.  Upon

reaching the area, Detective Akins walked along the public utility easement behind

Plaintiffs' home and observed several large marijuana plants growing in Plaintiffs'

backyard.  Detective Akins then decided to obtain a warrant to conduct a search of

Plaintiffs' home.

Prior to applying for the search warrant, Detective Akins provided another

detective from the task force, Detective Mark Negrete, with a phone number and

asked Detective Negrete to call the phone number and attempt to purchase drugs

from "Julian."  Detective Akins gave Detective Negrete an assumed identity with

whom "Julian" would be familiar.  Detective Negrete was not familiar with either

Mr. Al Ghamdi or Ms. Sinclair, and had never encountered them or heard their

voices prior to being asked to place the call.

Detective Negrete testified at his deposition that he called the phone number

provided to him by Detective Akins and that a female voice answered the phone.

Detective Negrete asked "[i]s Julian there?"   The female asked Detective Negrete

who was calling and Detective Negrete gave her the name of the assumed identity

that Detective Akins had directed him to use.  The female then told Detective

Negrete to "hold on" and left the phone.  Detective Negrete testified that he heard

the female say "Julian."  When a man spoke in to the phone, Detective Negrete

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 4

asked whether he could purchase some "bud" or "green," referring to marijuana. The man indicated that he did not have marijuana to sell at that time, but that he could "get you [Negrete] some white." Detective Negrete assumed that "white" referred to cocaine or methamphetamine. Detective Negrete indicated that he would like some "white" and the two arranged for Negrete to pick it up the following afternoon or evening. ECF No. 100-8, at 28-32, 35-36.

Detective Negrete did not record the telephone conversation or take any notes of the conversation. In addition, Detective Negrete could not recall at his deposition the phone number that he called or the assumed identity that he used. Nor did Detective Negrete actually purchase drugs from anyone at the Plaintiffs' residence. According to Detective Negrete, the search warrant was executed on Plaintiffs' residence before the arranged time for the sale of drugs. Detective Negrete further admitted that he did not know if the female who answered the phone was Karen Sinclair and testified that it "could have been anybody." Regarding the identity of the man on the other end of the line, Detective Negrete explained: "I don't know if that was Julian Al-Ghamdi, but I asked for Julian and they gave me Julian." ECF No. 100-8, at 33.

Detective Akins applied to a Yakima County superior court judge for a warrant to search Plaintiffs' home and submitted a draft affidavit in support of the warrant. Detective Akins' draft affidavit stated that Mr. Al Ghamdi possessed a

1   medical marijuana permit and set forth Mr. Al Ghamdi's qualifying medical

2   conditions as listed on the permit.  Detective Akins' draft affidavit contained

3   additional analysis and facts indicating that the detective did not believe that Mr.

4   Al Ghamdi was in genuine need of the use of medical marijuana.  ECF No. 84-1.

5          The Yakima County judge reviewed Detective Akins' draft search warrant

6   affidavit and indicated that she would not authorize the search warrant based on the

7   affidavit.  Detective Akins then consulted with a Yakima County prosecutor,

8   Therese Murphy, regarding the warrant affidavit.

9          Detective Akins' draft affidavit contained information from a "good citizen"

10  informant regarding Plaintiffs' growing of marijuana.  The citizen informant's

11  identity was known to Detective Akins but was not disclosed in the warrant

12  affidavit.  Detective Akins and Ms. Murphy stated that the detective contacted the

13  citizen informant by telephone during the editing process and obtained additional

14  information, which was then included in the warrant.  In addition to adding this

15  information to the edited affidavit, Detective Akins and Ms. Murphy removed the

16  information regarding Mr. Al Ghamdi's medical marijuana permit and medical

17  condition.

18         When Detective Akins and Ms. Murphy had finished editing the search

19  warrant affidavit, the judge reviewed the revised affidavit and signed the search

20  warrant authorizing the search of Plaintiffs' home.  The revised search warrant

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

contained information that a citizen informant had observed and reported

marijuana growing in Plaintiffs' backyard in July of 2009.  The affidavit stated that

the citizen informant had no criminal record, was not a paid informant, and was not

working for previous criminal charges.  The citizen informant was said to be

"motivated over concern of the neighborhood and children who live in the area."

The warrant affidavit contained additional information that Detective Akins

went to the area of Plaintiffs' home on September 16, 2009, and walked an

alleyway that ran behind Plaintiffs' home and contained utility poles.  From the

vantage point of the alleyway, Detective Akins verified that several large

marijuana plants could be seen in the backyard of Plaintiffs' home.

The warrant affidavit further stated that Detective Akins contacted the

citizen informant on September 17, 2009, and that the citizen informant told

Detective Akins that he or she had observed approximately ten to fifteen marijuana

plants growing in the backyard of Plaintiffs' residence.  The citizen informant

believed that Plaintiffs had been growing marijuana at the residence since October

or November of 2008.  The citizen informant claimed that Ms. Sinclair had told

him or her that the marijuana was for sale and that Mr. Al Ghamdi and Ms. Sinclair

had a storage area for marijuana plants in a cellar below the house.

The citizen informant further told Detective Akins of a previous time that

she had contacted the Grandview Police Department regarding Plaintiffs' growing

of marijuana, which took place in October or November of 2008.  The warrant

reports that Officer Glasenapp had confirmed the existence of six marijuana plants

in Plaintiffs' backyard at that time.

The warrant affidavit additionally stated that the citizen informant was

willing to testify in court, and that the citizen informant had received threats from

Mr. Al Ghamdi and Ms. Sinclair.  The warrant affidavit did not set forth the nature

of the threats or when they had occurred.

In addition to information from the citizen informant, the warrant affidavit

stated that Detective Akins had spoken with "neighbors in the area" on September

17, 2009.  The neighbors reported that Mr. Al Ghamdi had a party with

approximately fifteen people present on April 20, 2009, "the day some drug users

consider as National Pot Smoking Day."  The neighbors stated that they could

smell the odor of marijuana being smoked at this party.  The neighbors further

reported "a large volume of traffic to the residence they consider consistent with

drug trafficking."  Detective Akins further wrote in the affidavit that he had

received information that Mr. Al Ghamdi and Ms. Sinclair "do not work and have

no source of income except perhaps welfare."

The warrant affidavit also included a recounting of Detective

Negrete'sphone call during which Mr. Al Ghamdi allegedly agreed to sell

methamphetamine or cocaine to Detective Negrete, who was using an assumed

1    identity.  Detective Akins indicated in the warrant affidavit that he believed Mr. Al

2    Ghamdi and Ms. Sinclair were growing marijuana for drug trafficking, and that

3    drugs other than marijuana might be found at Plaintiffs' residence "as well as

4    paraphernalia for [the] packaging and sale of drugs."  ECF No. 84-2.[1]

5    The warrant was signed by the Yakima County judge and authorized the

6    search of Plaintiffs' home for evidence of marijuana trafficking.  The warrant

7    authorized a search for a wide variety of items typically associated with drug

8    trafficking, including the search of computer hardware and storage devices, U.S.

9    currency, records relating to marijuana trafficking, firearms and ammunition, and

10   stolen property.  ECF No. 84-2.

11   Detective Akins drafted a safety plan for the execution of the search warrant.

12   The safety plan had L.E.A.D. task force officers acting as the primary officers

13   executing the warrant and Grandview Police Department officers acting as backup.

14   Detective Akins also led the briefing for the officers involved in the execution of

15   the search warrant.  The search warrant was executed on September 22, 2009.

16   Plaintiffs were home at the time of the warrant, with Ms. Sinclair and minor

17

18   [1] Detective Akins' warrant affidavit further included boilerplate language

19   regarding the common practices of drug traffickers based on the detective's

20   training and experience.  ECF No. 84-2.

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

Plaintiff K.S. in the living room, minor Plaintiff J.A. in a back bedroom in the residence, and Mr. Al Ghamdi out in the backyard with another man, Idrian Monreal.

The circumstances surrounding the execution of the search warrant are in dispute. Plaintiffs contend that the officers entered the home without first knocking and announcing their presence. Plaintiffs additionally contend that the officers pointed their weapons at them upon entering the home. Finally, Plaintiffs contend that when the officers handcuffed Mr. Al Ghamdi, they put the handcuffs on tightly and did not loosen them despite Mr. Al Ghamdi's complaints of pain in his right wrist.

Defendants assert that they knocked and announced their presence and waited approximately twenty to thirty seconds for a response prior to entering Plaintiffs' home. Defendants additionally assert that, although they had their weapons drawn upon entering the home, they held their firearms in the "Sul" position, where the weapon is pointed down to the ground in front of potential threats, and did not point their firearms at Plaintiffs. Defendants allow that Mr. Al Ghamdi was put in handcuffs but assert that he suffered no injuries as a result.

Ms. Sinclair was allowed to call a family member to come pick up the minor children, K.S. and J.A. However, Detective Akins called Child Protective Services (CPS) to report the allegedly poor condition of the home and the children's'

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

1  alleged proximity to marijuana and paraphernalia.  Mr. Al Ghamdi and Ms.

2  Sinclair were arrested and taken to jail.

3       The search of Plaintiffs' home yielded eleven marijuana plants in pots in

4  Plaintiffs' backyard, as well as eight smaller marijuana plants in Plaintiffs' kitchen.

5  Officers also found paraphernalia and various containers of marijuana in two

6  bedrooms in the house.  ECF No. 100-14.  Defendant Officers contend they found

7  approximately two pounds of processed marijuana in Plaintiffs' home, but

8  Plaintiffs assert that there was only a small amount of "useable" marijuana in the

9  home at the time of the search.

10      Mr. Al Ghamdi and Ms. Sinclair were released from jail after making bail on

11  September 24, 2009.  Ms. Sinclair was reunited with her minor children that same

12  day.  However, a "no contact" order was entered prohibiting contact between Mr.

13  Al Ghamdi and Ms. Sinclair.  The Yakima County Prosecutor's Office filed

14  Informations charging Mr. Al Ghamdi and Ms. Sinclair with 1) manufacturing a

15  controlled substance and 2) possession with intent to deliver a controlled

16  substance.  The "no contact" order was lifted on October 23, 2009.  The

17  circumstances under which the criminal charges were resolved are not clear from

18  the record in this case; however it is undisputed that the charges against Mr. Al

19  Ghamdi and Ms. Sinclair were dismissed on July 22, 2010.

20

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 11

Plaintiffs filed suit in this Court, asserting multiple causes for alleged violations of their civil rights against Defendants the City of Grandview, Washington; the Law Enforcement Against Drugs ("L.E.A.D.") Task Force of Yakima County; prosecutor Therese Murphy; and law enforcement officers Detective Akins, Kal Fuller, John Arraj, Rick Abacara, Mitch Fairchild, Kevin Glasenapp, Travis Shephard, Seth Bailey, Robert Tucker, Albert Escalera, and Mark Negrete.  Plaintiffs further alleged an action for malicious prosecution against Ms. Murphy and Detective Akins, and an action for denial of familial relationships against Detective Akins alone. Plaintiffs also asserted a § 1983 claim against City of Grandview under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). ECF No. 3.  Defendants City of Grandview, Detective Akins, Kal Fuller, John Arraj, Rick Abarca, Mitch Fairchild, Kevin Glasenapp, Travis Shepard, Seth Bailey, Robert Tucker, and Ms. Murphy now move for summary judgment on all claims against them.

## ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a).  A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

(9th Cir. 1987). The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this challenge, the burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631-32.

The doctrine of qualified immunity protects government officials, including police officers, from liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 13

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified

immunity is "an immunity from suit rather than a mere defense to liability" and is

"effectively lost if a case is erroneously permitted to go to trial." *Mitchell v.

Forsyth*, 472 U.S. 511, 526 (1985).  Thus, the court must resolve questions of

qualified immunity "at the earliest possible stage in the litigation." *Hunter v.

Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

A police officer is entitled to qualified immunity in a § 1983 action unless

(1) the facts, when taken in the light most favorable to the plaintiff, show that the

officer's conduct violated a constitutional right; and (2) the right was clearly

established at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194,

201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223

(2009).

Defendants first contend that certain Defendant police officers are entitled to

summary judgment because Plaintiffs have not shown that those officers

personally participated in the alleged deprivation of Plaintiffs' rights.  Defendants

additionally contend that all City and County Defendants are entitled to summary

judgment on Plaintiffs' claims based on the issuance of the search warrant, the

execution of the search warrant, and the arrests of Mr. Al Ghamdi and Ms.

Sinclair.  Defendants finally contend that they are entitled to summary judgment on

Plaintiffs' claims for failure to prevent civil rights violations, for malicious

prosecution, for denial of familial relationships, and for municipal liability under *Monell*, 436 U.S. 658.  Each of these issues is examined in turn.

### A. Plaintiffs' claims against Officers Abarca, Bailey, Fairchild, Fuller, Glasenapp, and Shepard

In their motion for summary judgment, Defendants assert that they are entitled to summary judgment on all of Plaintiffs' substantive claims.  Defendants also requested summary judgment as to certain officers on the basis that those officers did not personally participate in the alleged wrongful acts.  Defendants thus alternatively argue that even if Plaintiffs could establish some of their claims, these particular officers are nonetheless entitled to summary judgment.

In order to assert a claim against an officer under § 1983, a plaintiff must show that the officer personally participated in the alleged deprivation of the plaintiff's rights.  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Put differently, an officer may not be held liable because of his membership in a group without a showing of individual participation in the alleged unlawful conduct. *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996).  "Integral participation" in the alleged deprivation of rights must be established on an individual basis.  *Id.*  A plaintiff is not allowed to "lump all the defendants [team members] together" and must instead "base each individual's liability on his own conduct."  *See id.* at 295.

1    Defendants contend that Plaintiffs' claims against Officers Abarca and

2  Bailey must be dismissed because those officers did not participate in obtaining the

3  warrant to search Plaintiffs' home and did not participate in the service of the

4  search warrant.  Officers Abarca and Bailey submitted affidavits declaring that

5  they were not even on duty at the time that the search warrant was executed.  ECF

6  No. 83 at 2; ECF No. 86 at 2.  Plaintiffs did not argue against summary judgment

7  in favor of Officers Abarca and Bailey, and presented no evidence contradicting

8  those officers' statements that they were not involved in the events of this suit in

9  any manner.  Therefore, summary judgment is appropriate in favor of Defendant

10 Officers Abarca and Bailey.

11    Defendants further contend that Plaintiffs' claims against Officers Fairchild,

12 Fuller, Glasenapp, and Shepard must be dismissed because those officers had no

13 involvement in preparing and obtaining the search warrant and acted only in a

14 backup capacity during the execution of the search warrant.  Plaintiffs did not

15 make any specific allegations as to these officers' conduct in their Amended

16 Complaint.  ECF No. 3.  Officers Fuller and Glasenapp each submitted an affidavit

17 explaining that they had no involvement in the writing of the search warrant

18 affidavit for the search of Plaintiffs' home, and that they were assigned only the

19 task of perimeter containment during the execution of the search warrant.  ECF

20 Nos. 88, 89, 91.  Officers Fuller and Glasenapp further explained that they did not

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 16

1   wield their service weapons at any time, did not enter Plaintiffs' residence for more

2   than a brief moment, were not involved in handcuffing any of the residents of

3   Plaintiffs' home, and did not speak to any residents of Plaintiffs' home while the

4   search warrant was executed. *Id.*

5        Officer Shepard also explained that he had no involvement in obtaining the

6   search warrant for the search of Plaintiffs' home.  Officer Shepard's assignment in

7   executing the warrant was to secure the back yard of the residence.  Though

8   Officer Shepard entered the backyard to secure it, the only individual with whom

9   he had contact was Idrian Monreal, who was not a resident of Plaintiffs' home and

10  is not a party to this suit.  Officer Shepard entered the residence only to deliver Mr.

11  Monreal to the area where Plaintiffs were in custody.  Officer Shepard specifically

12  stated that he was not involved in handling or handcuffing the residents of

13  Plaintiffs' home and did not believe that he even spoke to any of the residents

14  while he was at the scene.  ECF No. 91.

15       Officer Fairchild had greater involvement in the execution of the search

16  warrant than officers Fuller, Glasenapp, and Shepard.  Officer Fairchild

17  characterizes his involvement as initially consisting of perimeter containment, like

18  the other officers.  However, Officer Fairchild handcuffed Mr. Monreal in the

19  Plaintiffs' backyard and then took Mr. Monreal into Plaintiff's home to place him

20  with Plaintiffs, who were in custody while the search was conducted.  Fairchild

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

1    then read Plaintiffs, including the minor children, their *Miranda* warnings.  Officer

2    Fairchild further stood by and observed the detainees while the search warrant was

3    executed.  Officer Fairchild also states that he was involved in the booking of Mr.

4    Al Ghamdi and may have been involved in the booking of others as well.  ECF

5    Nos. 84, 87.

6         Plaintiffs contend that Officer Fairchild was verbally abusive toward them

7    during the time that he stood watch as the search was conducted.  ECF Nos. 103,

8    104.  Officer Fairchild denies that he or any of the other officers acted in an

9    abusive or inappropriate manner during any point of the execution of the search

10   warrant.  ECF No. 87.  However, Plaintiffs have alleged and supported some level

11   of individual involvement on the part of Officer Fairchild.  Thus, a genuine issue

12   of material fact has been raised as to Officer Fairchild's individual involvement,

13   and Officer Fairchild is not entitled to summary judgment on the ground that he

14   had no individual involvement in the alleged deprivation of Plaintiffs' rights.

15   Although the Court finds that Officer Fairchild is not entitled to summary

16   judgment on this specific ground, Officer Fairchild is entitled to summary

17   judgment if Plaintiffs cannot establish their substantive claims against him as

18   subsequently discussed in this Order.

19        Plaintiffs concede that Officers Fairchild, Fuller, Glasenapp, and Shepard

20   may not be held liable for the decisions to search the property and arrest Plaintiffs.

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 18

Plaintiffs instead contend that these officers may be liable for the manner in which the search was executed.  However, Plaintiffs do not dispute Defendants' contention that Detective Akins was in charge of planning the execution of the search warrant and briefing the officers on their assignments in executing the warrant.  ECF No. 101, at 18-20.  Nor do Plaintiffs dispute that Officers Glasenapp, Fairchild, Fuller, and Shepard were assigned the task of securing the perimeter of the residence.  ECF No. 101, at 22.  Plaintiffs did not make any specific allegations of conduct by this group of officers except as to Officer Fairchild.  ECF No. 101.  Therefore, there are no genuine issues of material fact that bar summary judgment in favor of Fuller, Glasenapp, and Shepard, because Plaintiffs have not demonstrated that those officers were personally involved in the alleged deprivation of Plaintiffs' rights.

### B. Issuance of the search warrant

Plaintiffs contend that Defendants Akins and Murphy employed judicial deception in obtaining the warrant to search Plaintiffs' home.  Plaintiffs allege that Detective Akins' revised search warrant affidavit contained numerous falsifications and omissions, and that if the warrant were reformed to exclude the false information and include the omitted information, the warrant affidavit would not have established probable cause to search for evidence of drug trafficking in Plaintiffs' home.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Thus, a valid warrant must meet four requirements: (1) it must be based on probable cause; (2) it must be supported by a sworn affidavit; (3) it must describe particularly the place of the search; and (4) it must describe particularly the things to be seized.  *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  When a police officer submits a search warrant affidavit that he knew to be false or should have known to be false, and probable cause would not have existed without the false statements, then the officer "cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost."  *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002).

To survive summary judgment on a claim of judicial deception, a plaintiff must (1) make "a substantial showing of deliberate falsehood or reckless disregard for the truth," and (2) "establish that but for the dishonesty, the challenged action would not have occurred."  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam) (internal quotations and citations omitted); *see also KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (stating that a plaintiff "must show that the defendant deliberately or recklessly made false statements or omissions that were

1    material to the finding of probable cause").  If the plaintiff satisfies these

2    requirements, then "the matter should go to trial."  *Butler*, 281 F.3d at 1024

3    (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997)).

4    Plaintiffs contend that Detective Akins' search warrant affidavit suffered

5    from a number of alleged falsehoods and omissions.  Plaintiffs contend that

6    Detective Akins' search warrant affidavit contained the following false statements:

7    that the citizen informant told Detective Akins that Karen Sinclair had said that the

8    Plaintiffs had marijuana for sale; that the citizen informant told Detective Akins

9    that there was a basement or cellar underneath Plaintiffs' home where marijuana

10   was kept; that anonymous neighbors told Detective Akins that there was an

11   unusual amount of traffic in and out of Plaintiffs' home and that the neighbors

12   could smell marijuana coming from Plaintiffs' backyard on April 20, 2009; that

13   Plaintiff Sinclair identified herself to Officer Negrete during a phone call where

14   Officer Negrete asked to purchase drugs, and that Plaintiff Sinclair put Plaintiff Al

15   Ghamdi on the phone; that Plaintiffs had no jobs or other source of income and

16   were on welfare; and that the alleyway behind Plaintiffs' home is a public area.

17   Plaintiffs also allege that the search warrant affidavit omitted the following

18   material information: that Grandview police officers previously had investigated

19   the presence of marijuana plants at Plaintiffs' residence and ascertained that Al-

20   Ghamdi possessed a medical marijuana certificate under Washington law; that

Plaintiff Al-Ghamdi later went to the Grandview police station and provided the

clerk with a copy of his reissued medical marijuana certificate effective from July

2009 to July 2010; that the citizen informant and Plaintiffs had disagreements in

the past and were feuding; and that Grandview police officers had been to

Plaintiffs' home on numerous occasions as a result of neighbors' calls but had not

found grounds to arrest Plaintiffs.

In moving for summary judgment on Plaintiffs' claim of judicial deception,

Defendants contend that probable cause existed for the issuance of the warrant

regardless of the alleged falsifications and omissions.  Thus, the Court will first

examine the materiality of the alleged falsifications and omissions and then turn to

whether Plaintiffs have made a substantial showing of deliberate falsehood or

reckless disregard for the truth.

### 1. Materiality

The materiality of allegedly false statements or omissions is a matter for the

court to determine.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009)

(citing *KRL*, 384 F.3d at 1117).  Where an officer has submitted false statements,

the court must purge those statements from the warrant affidavit and determine

whether the remaining evidence justified issuance of the warrant.  *Id.* (citing

*Baldwin v. Placer Cnty.*, 418 F.3d 966, 971 (9th Cir. 2005)).  If an officer omitted

facts "required to prevent technically true statements in the affidavit from being

1    misleading," then the Court must determine whether the affidavit would establish

2    probable cause when supplemented with the omitted material.  *Id.* (citing *Liston*,

3    120 F.3d at 973-74).  The existence of probable cause is determined by making "a

4    practical, common-sense decision whether, given all the circumstances set forth in

5    the [warrant] affidavit . . ., there is a fair probability that contraband or evidence of

6    a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238

7    (1983).

8         Defendants' argument regarding materiality focuses on whether the search

9    warrant would have established probable cause of the manufacturing of marijuana

10   even if the warrant were reformed to excise all alleged falsifications and include all

11   alleged omissions.  However, as Plaintiffs point out, the search warrant was issued

12   for drug trafficking and was broader in scope than a warrant based only on

13   Plaintiffs' having grown marijuana in their backyard.  The Court will first examine

14   whether probable cause existed for the manufacturing of marijuana regardless of

15   all alleged omissions and falsifications, and then turn to the question of whether a

16   reformed affidavit would establish probable cause for drug trafficking.

17        a.  Probable cause for manufacturing marijuana

18        Defendants contend that probable cause existed for the issuance of the

19   search warrant regardless of any alleged falsifications and omissions, because

20   multiple persons had observed marijuana growing in Plaintiffs' backyard.

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 23

According to Defendants, this established probable cause to believe that Plaintiffs were manufacturing marijuana in violation of Washington law.

Plaintiffs contend that probable cause would not have existed for marijuana manufacturing if the information regarding Mr. Al Ghamdi's medical marijuana permit had not been omitted from Detective Akins' revised search warrant affidavit. However, as Defendants argue, Mr. Al-Ghamdi's medical marijuana permit is immaterial because Washington's Medical marijuana statute, as it existed at the time, provided only an "affirmative defense" excusing the criminal act of possessing marijuana. *State v. Fry*, 168 Wn. 2d 1, 7 (2010). The statute did not negate any elements of the charged crime and did not negate probable cause for finding that a crime had occurred. *Id.* at 7-8. Moreover, the manufacturing of marijuana, a Schedule One controlled substance, was prohibited under Washington law at all times relevant to this suit. RCW 69.50.204, .401 (2008). Even simple possession of a small amount of marijuana was prohibited under Washington law. RCW 69.50.4014 (2008).

The warrant affidavit establishes that the citizen informant saw marijuana growing in Plaintiffs' backyard and that Detective Akins and Officer Glasenapp also confirmed the presence of marijuana growing in Plaintiffs' backyard. Plaintiffs assert that the citizen informant identified in Detective Akins' affidavit was in fact two persons living next door to Plaintiffs: Gloria Alaniz and her

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 24

daughter Josie Alaniz.  Defendants do not dispute this point.  At their depositions,

Gloria and Josie Alaniz denied making many of the statements attributed to the

citizen informant in the warrant affidavit; however, both testified that they

informed the police that they had seen marijuana plants growing in Plaintiffs'

backyard.  ECF No. 100-10, at 6; ECF No. 141, at 12-14, 24-25.

Plaintiffs contend that the officers could not have lawfully seen the

marijuana growing in their backyard because the alleyway behind their house is

private and not open to the public.  Plaintiffs appear to be arguing that the officers'

actions of walking along the utility easement constituted an unlawful search of

Plaintiffs' property, such that the information obtained from the search could not

be used to support a later search warrant.  *See United States v. Grandstaff*, 813

F.2d 1353, 1355 (9th Cir. 1987).  However, this is only true if the utility easement

could be said to be within the "curtilage" of Plaintiffs' home.  *See, e.g.*, *United*

*States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010).

The extent of a home's "curtilage" is defined with reference to four factors:

"the proximity of the area claimed to be curtilage to the home, whether the area is

included within an enclosure surrounding the home, the nature of the uses to which

the area is put, and the steps taken by the resident to protect the area from

observation by people passing by."  *Id.*  (quoting *United States v. Dunn*, 480 U.S.

294, 301 (1987)).  These factors do not support a finding that the public utility

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 25

1   easement fell within curtilage of Plaintiff's home because the alleyway was located

2   at the furthest reaches of Plaintiffs' property beyond the fence enclosing Plaintiffs'

3   backyard, and because the placement of power lines, phone lines, cable lines, and

4   irrigation lines are not typically associated with uses of the home.  *See also United*

5   *States v. Rey*, 663 F. Supp. 2d 1086, 1114-17 (D.N.M. 2009) (determining that a

6   power-line easement did not fall within the curtilage of defendant's home).

7   Because the utility easement did not lay within the curtilage of Plaintiffs' home,

8   Detective Akins' and Officer Glasenapp's act of observing marijuana from the

9   vantage point of the easement did not constitute an unlawful search of Plaintiffs'

10  home, and the information that the officers were able to view marijuana in

11  Plaintiffs' backyard was properly included in Detective Akins' warrant affidavit.

12          Thus, the warrant affidavit established probable cause to believe that

13  Plaintiffs were growing marijuana in violation of Washington law even if all

14  alleged falsifications and omissions were cured.  However, as Plaintiffs point out,

15  the warrant was issued for drug trafficking and not simply for the manufacture of

16  marijuana occurring in Plaintiffs' backyard.  The next issue is whether a reformed

17  affidavit would establish probable cause for drug trafficking.[2]

18  _____

    [2] Defendants additionally contend that probable cause existed for the issuance of

19  the warrant under federal law, because federal law criminalizes marijuana and does

20  not recognize an exception for medical marijuana.  *See Gonzales v. Raich*, 545

1          b.  Probable cause for drug trafficking

2          Detective Akins' search warrant affidavit stated a belief that Plaintiffs were

3 trafficking drugs.  The search warrant issued for Plaintiffs' home allowed

4 executing officers to search for evidence of drug trafficking, including for the

5 search of such items as computer hardware, software, and peripheral devices;

6 vehicles associated with the residence; packaging materials; U.S. currency; records

7 related to marijuana trafficking; weapons and ammunition; and stolen property.

8 ECF No. 84-2.

9          A warrant may be overbroad where its scope is not limited "by the probable

10 cause on which the warrant is based."  *United States v. SDI Future Health, Inc.*,

11 

12 U.S. 1, 14-15 (2005).  However, in *United States v. $186,416.00 in U.S. Currency*

13 the Ninth Circuit held that the existence of probable cause under federal law was

14 insufficient to support a search warrant sought in state court by a city agency,

15 where "[n]othing in the documents prepared at the time the warrant was

16 obtained . . . or in the procedure followed to obtain that warrant supports the

17 proposition that the [city agency] thought it was pursuing a violation of federal

18 law."  590 F.3d 942, 948 (9th Cir. 2010).  Detective Akins' search warrant

19 affidavit references state law on controlled substances but not federal law.  ECF

20 No. 84-2.  The search warrant itself similarly references only state law.  *Id.*

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 27

568 F.3d 684, 702 (9th Cir. 2009) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991)).  Put differently, "there [must] be probable cause to seize the particular thing[s] named in the warrant."  *Id.* at 702-03 (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 857).  An officer would not be entitled to qualified immunity with regard to an overbroad search warrant if the overbroad warrant was issued as a result of judicial deception.  *See United States v. Underwood*, --- F.3d ----, 2013 WL 3988675, at 8 (9th Cir. 2013) (stating that an officer will not have reasonable grounds for believing that a warrant was properly issued where affiant misled the issuing judge by recklessly or deliberately placing false information in the warrant affidavit).

Here, if the alleged deliberate or reckless omissions and falsifications are removed from Detective Akins' warrant affidavit, there was not probable cause to believe that Plaintiffs engaged in marijuana trafficking or trafficking of other drugs.  Without the statements attributed to the citizen informant and without Detective Negrete's phone call, wherein Mr. Al Ghamdi allegedly offered to sell drugs, the only remaining evidence of trafficking comes from "neighbors in the area" who "report a large volume of traffic to the residence they consider consistent with drug trafficking."  ECF No. 84-2.  The neighbors additionally reported that Mr. Al Ghamdi had approximately fifteen people present at his residence on April 20, "a day some drug users consider as National Pot Smoking

Day," and that the neighbors could smell the odor of marijuana being smoked. ECF No. 84-2.

Even if the neighbors' basis of knowledge is inferred, the search warrant affidavit is lacking any information to establish the veracity of the persons supplying the information. *See Gates*, 462 U.S. at 238. The neighbors' tips are not corroborated by any other evidence when the alleged falsifications are removed from the search warrant affidavit and are not, in themselves, enough to support a finding of probable cause that Plaintiffs were trafficking in marijuana. Thus, the alleged falsifications and omissions in Detective Akins' search warrant affidavit would be material to a finding of probable cause to search for evidence of drug trafficking.

## 2. *Deliberate falsehood or reckless disregard for the truth*

To survive summary judgment on an affiant officer's state of mind, a plaintiff "need only make a substantial showing" of a deliberate or reckless falsification or omission and is not required to provide "clear proof." *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1087 (9th Cir. 2011) (quoting *Liston*, 120 F.3d at 974). "Summary judgment is improper where 'there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do.'" *Id.* (quoting *Hopkins v. Bonvicino*, 573 F.3d

752, 763 (9th Cir. 2009)).  State of mind is generally a question for the jury.  *See Butler*, 281 F.3d at 1024 (citing *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)).

Plaintiffs have introduced deposition testimony from Gloria Alaniz, and her daughter, Josie Alaniz, presumed to be the "citizen informant," directly contradicting many of the statements attributed to the citizen informant in the warrant affidavit.   The Alanizes testified at their depositions that they only told the police that Plaintiffs were growing marijuana in their backyard, and did not tell Detective Akins that Ms. Sinclair had said that the Plaintiffs sold marijuana.  ECF No. 100-10, at 6, 8-9; ECF No. 141, at 12, 21.[3]  Gloria Alaniz additionally testified that she was never asked whether she was willing to testify against the Plaintiffs, and that the Plaintiffs had never threatened her aside from one occasion when Mr. Al Ghamdi got into a heated argument with her husband over some dogs.  ECF No. 141, at 11-12, 16-18.  The Alanizes further acknowledged that they had feuded

---

[3]  In addition, Ms. Sinclair submitted a sworn declaration in which she stated that she has never had a conversation with anyone in the Alaniz family about growing, possessing, or selling marijuana.  ECF No. 103, at 2.

1  with the Plaintiffs in the past and that the police had been called on some occasions

2  related to the feuds.  ECF No. 100-10, at 7; ECF No. 151, at 16-18.[4]

3       Plaintiffs also have introduced declarations and other evidence challenging

4  Detective Negrete's alleged phone call to Plaintiffs during which Mr. Al Ghamdi

5  allegedly offered to sell drugs.  Ms. Sinclair and Mr. Al Ghamdi each declared that

6  they have never offered to buy or sell drugs and never received a phone call from

7  anyone asking for marijuana or other drugs.  ECF No. 103, at 2; ECF No. 104, at

8  5.[5]  Plaintiffs also introduced Detective Negrete's deposition testimony, in which

9

10  [4]  In addition, Ms. Sinclair and Mr. Al Ghamdi submitted declarations in which

11  they outlined numerous disagreements that they had with the Alaniz family prior to

12  the fall of 2009, including multiple occasions during which the police were called.

13  ECF No. 103, at 3; ECF No. 104, at 2-3.

14  [5]  Defendants have asked the Court to rule that Mr. Al Ghamdi is incompetent to

15  offer a declaration in opposition to summary judgment because Defendants'

16  deposition of Mr. Al Ghamdi had to be continued when Mr. Al Ghamdi could not

17  accurately recall events relevant to the suit due to being under the influence of pain

18  medication he claimed he was taking for a back injury.  Defendants contend that

19  Mr. Al Ghamdi has not shown that he is now qualified to offer testimony and that

20  the Court should thus disregard his declaration.  However, the Federal Rules of

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 31

Detective Negrete explained that Detective Akins supplied him with a phone number and an assumed identity and asked him to try to purchase drugs.  ECF No. 100-8, at 21-24, 29.  Detective Negrete did not know if the phone number was for a residence or a cell phone.  ECF No. 100-8, at 23, 25.  Detective Negrete stated that he was not familiar with and had never met Plaintiffs at the time that he placed the phone call and did not know their voices.  ECF No. 100-8, at 7, 25-27, 33.

Evidence state a presumption that every lay witness is competent to offer testimony provided an adequate foundation is laid to establish personal knowledge.  *See* Fed. R. Evid. 601, 602.  Mr. Al Ghamdi's declaration establishes his personal knowledge of the events and the Court will not presume that Mr. Al Ghamdi is still incompetent to testify based on an incident in the past.  Moreover, drug use alone does not render a witness incompetent to testify on matters within the witness' personal knowledge.  *E.g.*, *United States v. Sinclair*, 109 F.3d 1527, 1536-37 (10th Cir. 1997).  Mr. Al Ghamdi's prior medicated state and inability to recall certain events may touch on credibility and the weight that should be afforded to his testimony, which must be determined by the jury, but does not render him incompetent to offer testimony under the Federal Rules of Evidence.  *See Barto v. Armstrong World Indus., Inc.*, 923 F. Supp. 1442, 1445-47 (D.N.M. 1996).

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 32

1    Detective Negrete did not record the phone conversation and took no notes

2    of the conversation, even though the detective testified that it was often his practice

3    to do one or the other.  ECF No. 100-8, at 16-19, 32.  There were no witnesses to

4    Detective Negrete's phone call.  ECF No. 108, at 21.  Detective Negrete also could

5    not recall what phone number he called or what his assumed identity was, although

6    this point is hardly surprising given that his deposition occurred years after the

7    events in question.  Detective Negrete further testified at his deposition that there

8    was no discussion of the amount or price of the drugs, and that the planned

9    exchange never took place because the search warrant was served first.  ECF No.

10   100-8, at 31-32, 35.

11   Detective Negrete himself acknowledged that it "could have been anybody"

12   that he called and that he did not know if the woman was Ms. Sinclair or if the man

13   was Mr. Al-Ghamdi.  ECF No. 100-8, at 33.  However, according to Detective

14   Negrete he asked for "Julian" when the female answered, and thus presumed the

15   man who came to the phone was Julian Al-Ghamdi.  *Id.*

16   There was no basis established to support that the phone number that

17   Detective Akins gave to Detective Negrete was connected to the Plaintiffs.

18   Moreover, the warrant affidavit states that Ms. Sinclair identified herself on the

19   phone, but Detective Negrete stated in his deposition that "a female" answered and

20   that he had no way of knowing whether that female was Ms. Sinclair.  Plaintiffs

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 33

1    have submitted declarations denying that the conversation ever took place at all.

2    Thus, there are genuine issues of material fact regarding the phone call that must

3    be resolved by a jury.  Detective Negrete's phone call is critical to establishing

4    probable cause for drug trafficking, but Plaintiffs have introduced evidence

5    questioning whether the call took place as described in Detective Akins' search

6    warrant affidavit.

7         The Court finds that Plaintiffs have made a substantial showing that

8    Detective Akins may have deliberately or recklessly falsified or omitted

9    information in the search warrant affidavit that was material to the issuing judge's

10   finding of probable cause.

11        Therefore Plaintiffs' claims based on judicial deception may proceed against

12   Detective Akins.  However, the other officers who are a party to this motion are

13   entitled to summary judgment on this claim.  The other officers could not have

14   known that judicial deception was employed or that the warrant was overbroad

15   because none of the other officers subject to this motion were involved in drafting

16   the search warrant affidavit or seeking the warrant.  Thus the other officers were

17   entitled to rely on the warrant.  *See Marks v. Clarke*, 102 F.3d 1012, 1028-29 (9th

18   Cir. 1996).

19        Therese Murphy also is entitled to summary judgment on this claim.

20   Plaintiffs have not provided anything to support that Ms. Murphy would have

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 34

known that the affidavit contained deliberate or reckless falsifications or omissions.  Plaintiffs' claim against Ms. Murphy is primarily predicated on the theory that she assisted Detective Akins in removing information about Mr. Al Ghamdi's medical marijuana permit, but the Court has found that the existence of the medical marijuana permit was immaterial, because its existence would not have destroyed probable cause.

Plaintiffs' claims based on the issuance of the search warrant claims are found in Counts 1 and 3 of the Amended Complaint.  ECF No. 3.  Summary judgment is granted on these claims in favor of all officer defendants subject to this motion other than Detective Akins and in favor of Therese Murphy.  However, summary judgment is denied as to Detective Akins on these claims.

**C. Execution of the search warrant**

Plaintiffs claim that all Defendant officers failed to knock and announce their presence prior to entry into Plaintiffs' home and used excessive force in executing the search warrant on Plaintiffs' home.  Defendants move for summary judgment on all of Plaintiffs' claims relating to the manner in which the search warrant was executed.

An officer's use of force in the process of serving a search warrant is subject to the Fourth Amendment's reasonableness standard.  *See Boyd v. Benton Cnty.*, 374 F.3d 773, 778-80 (9th Cir. 2004).  Whether a particular use of force is

reasonable is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The government's interest in the use of force may be evaluated with reference to such factors as (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* The Ninth Circuit also considers the availability of alternative methods of responding to the situation. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). In applying this test, the finder of fact must keep in mind the perspective of a reasonable officer on the scene and should not engage in use of "20/20 vision of hindsight" in evaluating the circumstances facing the officer at the time. *Graham*, 490 U.S. at 396-97.

Whether police officers knock and announce their presence prior to entering a dwelling is "an element of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). The time that officers must wait between the knock and announce and entry of the residence "must be reasonable considering the particular circumstances of the situation." *United States v. Chavez-Miranda*, 306 F.3d 973, 980 (9th Cir. 2002) (citations omitted). An officer's noncompliance with the knock and announce rules is

excused where exigent circumstances exist. *United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000) (citing *United States v. Hudson*, 100 F.3d 1409, 1417 (9th Cir. 1996)).

Exigent circumstances are "circumstances that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.* The requisite showing of exigent circumstances is "not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Richards v. Wisconsin*, 520 U.S. 385, 394-95 (1997).

Even where an officer's actions amount to a violation of the Fourth Amendment, the officer will be entitled to qualified immunity if the right was not clearly established at the time of the injury. *See Saucier*, 533 at 202. A right is clearly established if a reasonable officer would understand that his conduct was unlawful under the circumstances that confronted him. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, "[q]ualified immunity operates . . . to protect officers from the sometimes hazy border between excessive and acceptable force." *Saucier*, 533 U.S. at 206 (internal quotation omitted). The plaintiff bears the burden of showing that the right at issue was clearly established. *E.g.*, *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

Plaintiffs assert that officers pointed their guns at them during the entry into the home. Plaintiff Karen Sinclair stated that the first officer in the door pointed his gun at her, although she was not specific about where the gun was pointed on her body. Karen Sinclair additionally stated that after she went to her daughters, the officer continued to point his gun in their general direction while the rest of the officers entered the home. ECF No. 103, at 5. However, Karen Sinclair acknowledged that the officer did not point his weapon directly at her daughters. ECF No. 115-11, at 9. Plaintiff Al Ghamdi stated that when he came in to his home from the backyard, he encountered an officer who pointed his gun at Al Ghamdi's chest. ECF No. 104, at 7.[6] Defendants deny that weapons were ever trained on the Plaintiffs during the execution of the search warrant, and instead assert that the officers held their weapons in the "Sul" position where the muzzle is pointed down at a fixed distance in front of them.

---

[6] Mr. Al Ghamdi's friend, Idrian Monreal, was present in Plaintiffs' backyard at the time the search warrant was executed and testified in his deposition that police officers aimed their weapons at his chest and head at the time that the officers first entered Plaintiffs' backyard. ECF No. 100-5. However, Mr. Monreal is not a party to this action and Plaintiffs may not assert a claim for excessive force on his behalf.

Plaintiffs additionally assert that when Mr. Al Ghamdi was put in handcuffs, his right wrist began to hurt due to a chronic condition.  ECF No. 104, at 7.  Mr. Al Ghamdi and Ms. Sinclair each stated that they told the officers that the handcuffs were hurting Mr. Al Ghamdi due to his wrist condition, but that the officers nonetheless refused to loosen the handcuffs.  ECF No. 103, at 6; ECF No. 104, at 7.

Plaintiffs finally assert that the officers did not knock or announce their presence prior to entering Plaintiffs' home.  ECF No. 103, at 4-5; ECF No. 104, at 5; ECF No. 100-11, at 7-10.  Defendants assert that they complied with the knock and announce rule and waited approximately 20-30 seconds after the first knock before entering Plaintiffs' home.  Defendants assert in the alternative that exigent circumstances justified dispensing with the knock and announce requirement.

Regarding Plaintiffs' allegations that Defendants momentarily pointed their guns at them, the Ninth Circuit has held that pointing a gun at a suspect may constitute excessive force in some circumstances.  In *Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002) (en banc), the court found excessive force where multiple officers pointed their weapons at the head of the plaintiff at close range, when the officers were in the course of investigating a possible misdemeanor offense and the man, who was clearly unarmed, approached the officers from some distance away in a peaceful manner.  *Id.* at 1010, 1013-14.  In *McKenzie v. Lamb*,

738 F.2d 1005, 1010 (9th Cir. 1984), the court found excessive force where officers first forced the plaintiffs to the wall, handcuffed them, threw them on the floor, and then pressed the barrels of their guns up against the plaintiffs' heads. *Id.* at 1010-11. And in *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007), the court found excessive force where a large group of police officers pointed their weapons at an unarmed eleven year old boy for approximately fifteen minutes even though the boy had been handcuffed, posed no threat, was not resisting the officers, and was not attempting to flee. *Id.* at 845-48.

The circumstances of this case are vastly different from those where the act of pointing a weapon at a suspect has been found to constitute excessive force. The officers in this case were serving a search warrant on a home and had no way of knowing what they would encounter once inside the home, specifically whether anyone inside was armed or otherwise posed a threat. Plaintiffs have not alleged that the guns were pointed at their head. Plaintiffs' allegations regarding the pointing of weapons covers the period of time when officers were first entering and securing the residence, not when Plaintiffs already were secured in handcuffs and after it already had been ascertained that Plaintiffs were unarmed, compliant, and posed no risk. Therefore, even taking the facts in the light most favorable to the Plaintiffs, the officers' actions did not amount to a violation of clearly established law that allows similar actions in similar circumstances. *See Burke v. Cnty. of*

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 40

*Alameda*, 352 Fed. Appx. 216, 219 (9th Cir. 2009) (unreported decision) (finding that qualified immunity shielded officer from liability where "it would not have been obvious to a reasonable officer that the aiming of a gun . . . would constitute excessive force" under the circumstances).

Turning to the officers' use of handcuffs on Al Ghamdi, the Ninth Circuit has recognized that tight handcuffing may constitute excessive force.  In *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004), the court found excessive force where the plaintiff claimed he was "physically attacked" from behind while complying with an officer's order to walk away.  The plaintiff was then forced "face first down" into his car, with his face, chest, and glasses being smashed in the process, and after handcuffs were tightly applied he was thrown "upside down" and "head first" into the officer's patrol car.   The plaintiff was forced to give up his profession in dentistry as a result of injuries that he sustained to his hand in the incident.  *Id.* at 1109-10, 1111.

In *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993), the court allowed an excessive force claim to proceed where a sixty-seven year old man with limited mobility claimed that officers fastened handcuffs around his wrists so tightly that they left bruises for several weeks.  *Id.* at 1434-36.  Similarly, in *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989), the court found excessive force where an officer handcuffed the plaintiff in a rough and abusive manner, resulting in the plaintiff's

1    need to seek medical treatment for injuries sustained to her wrist and upper arm.

2    *Id.* at 645.

3            Mr. Al Ghamdi's own version of the facts establishes that while he suffered

4    pain while he was in handcuffs, he was otherwise uninjured from the incident.  In

5    addition, Al Ghamdi has not alleged other physically abusive and outrageous

6    conduct as typically found when tight handcuffing may form the basis of an

7    excessive force claim.  Thus, the officers did not violate clearly established law by

8    applying the handcuffs tightly and disregarding Al Ghamdi's complaints.

9            Defendants are similarly entitled to summary judgment on Plaintiffs' claim

10    that the police acted unreasonably in their alleged failure to knock and announce.

11    Though the parties dispute whether police officers knocked and announced their

12    presence prior to entering Plaintiffs' residence, the record establishes that exigent

13    circumstances would have supported dispensing with the knock and announce

14    requirement.

15            Defendants assert that exigent circumstances existed based on the officers at

16    the front of the residence having heard commands being given in the back of the

17    home and on Karen Sinclair's alleged action of going towards the rear of the house

18    to retrieve Mr. Al Ghamdi from the backyard prior to police entry.  Although

19    Plaintiffs contend that Ms. Sinclair did not attempt to summon Mr. Al Ghamdi

20    from the backyard until after the police officers had entered the front door of

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 42

Plaintiffs' home, it is undisputed that officers were in the backyard giving commands to a friend of the Plaintiffs, Mr. Monreal, and that the officers at the front door heard these commands being given before entering Plaintiffs' residence. ECF No. 101, at 29-32.

Mr. Monreal testified at his deposition that when the rear perimeter officers encountered him in the backyard, they told him to get down on the ground and to be quiet. ECF No. 82-5, at 4-5. The rear perimeter officers stated in declarations submitted in support of summary judgment that the officers loudly announced "Police, search warrant, get on the ground" when they entered the backyard and encountered Mr. Monreal. ECF No. 91, at 3; ECF No. 87, at 3. The officers at the front of the residence heard the commands being given in the backyard and decided to enter the home believing that the occupants of the home were aware of the officers' presence and might be attempting to flee out the back. ECF No. 84, at 8; ECF No. 93, at 3-4. Under these facts, the officers reasonably could have believed that exigent circumstances existed due to the possibility that the occupants of the home were intending to flee out the back door or destroy evidence. *See Richards*, 520 U.S. at 394 ("no-knock" entry allowable where officers "have a reasonable suspicion that knocking and announcing their presence . . . would be dangerous or futile, or [] would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence").

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 43

1    Therefore, even when viewing the facts in the light most favorable to

2    Plaintiffs, the officers are entitled to qualified immunity on Plaintiffs' claims of

3    excessive force.

4    **D. Plaintiffs' arrest**

5    An arrest made without probable cause is a Fourth Amendment violation

6    giving rise to a claim for damages under § 1983.  *Rosenbaum v. Washoe Cnty.*, 663

7    F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda v. Richmond*, 885 F.2d 1384,

8    1391 (9th Cir. 1988)).  However, an officer who makes an arrest without probable

9    cause is entitled to qualified immunity if he "reasonably believed" that probable

10   cause existed.  *Id.* (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th

11   Cir. 2009)).  Probable cause exists to make a warrantless arrest "when the facts and

12   circumstances within [the officer's] knowledge are sufficient for a reasonably

13   prudent person to believe that the suspect has committed a crime."  *Id.* (citing

14   *Crowe v. Cnty of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010)).

15   The arresting officers had probable cause to arrest Mr. Al Ghamdi for

16   growing and possessing marijuana in violation of Washington law, because they

17   had viewed growing marijuana from the alleyway.  Plaintiffs' rebuttal focuses on

18   the fact that Mr. Al Ghamdi possessed a medical marijuana permit.  However, as

19   explained above, Mr. Al Ghamdi's medical marijuana permit did not negate

20

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 44

probable cause for arrest and instead served only as an affirmative defense once charges were brought.  *See Fry*, 168 Wn. 2d 1.

Nor does the overbroad search warrant negate probable cause to arrest.  An arrest may be based on probable cause that any specific criminal violation has occurred.  *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010).  The officers had probable cause to believe Plaintiffs had violated Washington's law with regard to the manufacture and possession of controlled substances before the search was carried out.

With regard to the arrest of Karen Sinclair, Plaintiffs rely on RCW 69.51A.050 (2008) in arguing that her arrest was unlawful.  RCW 69.51A.050(2) states that "[n]o person shall be prosecuted" for a criminal offense "solely for being in the presence or vicinity of medical marijuana or its use as authorized by this chapter."  However, "state restrictions [on arrest] do not alter the Fourth Amendment's protections."  *Edgerly*, 599 F.3d at 956 (quoting *Virginia v. Moore*, 553 U.S. 164, 176 (2008)) (alteration in *Edgerly*).  The Fourth Amendment requires only that probable cause exists for arrest.  When such probable cause exists, state law rules restricting an officer's ability to arrest the person are immaterial in a § 1983 action for arrest without probable cause.  *See id.*  In this case, it was reasonable for the arresting officers to believe that Mr. Al Ghamdi and Ms. Sinclair violated Washington law by manufacturing or possessing marijuana.

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 45

### E. Plaintiffs' claim against Detective Akins and Therese Murphy for malicious prosecution

To prevail on a claim for malicious prosecution under § 1983, a plaintiff must show "that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)) (alteration in *Awabdy*). A malicious prosecution claim may be brought against prosecutors and other persons who wrongfully caused the charges to be filed. *Galbraith*, 307 F.3d at 1126-27.

Ordinarily, the decision to file a criminal complaint "is presumed to result from an independent determination on the part of the prosecutor" and such independent determination "precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy*, 368 F.3d at 1067. However, the presumption of independent judgment does not apply where an officer recklessly or intentionally falsified information that played a material role in the alleged wrongful prosecution. *Galbraith*, 307 F.3d at 1126-27; *see also Barlow v. Ground*, 943 F.2d 1132, 1136-37 (9th Cir. 1991) (finding that officers were not shielded by prosecutor's decision to file charges where a jury could conclude that the officers misrepresented the facts to

1    the prosecutor and that those misrepresentations resulted in the filing of a criminal

2    complaint).

3        Plaintiffs were charged with manufacturing a controlled substance and

4    possession with intent to distribute a controlled substance under Washington law,

5    RCW 69.50.401.  ECF No. 82-7.  When a claim of malicious prosecution is based

6    on more than one charge, the court must "separately analyze the charges claimed to

7    have been maliciously prosecuted."  *E.g.*, *Johnson v. Knorr*, 477 F.3d 75, 85 (3rd

8    Cir. 2007) (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)).   As

9    discussed previously in this Order, the Court finds that probable cause existed for

10   charging Plaintiffs with manufacturing a controlled substance, but that probable

11   cause would not have existed for drug trafficking if Detective Akins in fact

12   falsified or withheld material information as alleged by Plaintiffs.  Thus genuine

13   issues of material fact preclude summary judgment in favor of Detective Akins on

14   Plaintiffs' claim for malicious prosecution on the charge of possession with intent

15   to distribute a controlled substance.  This claim is found in Plaintiffs' Fifth Claim

16   for Relief, ECF No. 3.

17       However, Plaintiffs have not made a showing that Ms. Murphy would have

18   reason to believe that Detective Akins falsified or withheld material information.

19   Therefore, summary judgment is granted as to Ms. Murphy on Plaintiffs' claim for

20   malicious prosecution.

### F.  Plaintiffs' claim for denial of familial relationships against Detective Akins

"[A] parent has a fundamental liberty interest in the companionship and society of his or her child and [] the state's inference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983."  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).  However, the constitutional liberty interest in the maintenance of familial relationships is not absolute.  *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012).  "The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children."  *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1125 (9th Cir. 1989). "Unwarranted state inference" with the relationship between parent and child violates substantive due process under the Fourteenth Amendment.  *Crowe*, 608 F.3d at 441.  Interference with the familial relationship is "unwarranted" when it is for the purposes of oppression.  *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

Plaintiffs allege that Detective Akins interfered with Plaintiffs Mr. Al Ghamdi's and Ms. Sinclair's relationship with their children, K.S. and J.A., when he called Child Protective Services ("CPS") to report the alleged state of Plaintiffs' home at the time of the search and the children's alleged access to marijuana and

1    marijuana paraphernalia.  Plaintiffs further allege that CPS then conducted an

2    investigation and ultimately cleared Plaintiffs.  ECF No. 3, at 11.

3         The undisputed facts of this case demonstrate that Detective Akins' act of

4    contacting CPS did not actually result in state interference with the relationship

5    between the adult plaintiffs and their children.  It is undisputed that CPS never took

6    custody of the children.  ECF No. 101, at 45.  At the time that the search warrant

7    was served and Plaintiffs were arrested, Ms. Sinclair was permitted to contact a

8    family member to come and pick up the minor children.  The children were then

9    released to a family member.  Ms. Sinclair was reunited with her children three

10   days later when she was released from jail.  ECF No. 101, at 57.

11        Mr. Al-Ghamdi was prohibited from contact with Ms. Sinclair pursuant to a

12   court order entered at approximately the time he was released from jail.  ECF No.

13   101, at 57-58.  However, Plaintiffs have introduced nothing showing that Detective

14   Akins played a role in securing the no-contact order or that the no-contact order

15   was entered for the purposes of oppression.

16        Summary judgment is therefore appropriate on Plaintiffs' claim for denial of

17   familial relationships.

18        **G. Plaintiffs' claim for failure to prevent civil rights violations**

19        Plaintiffs assert that the officer Defendants failed to prevent civil rights

20   violations committed by their fellow officers.  Police officers do have a duty to

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 49

1    intercede when their fellow officers violate a citizen's constitutional rights.

2    *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States*

3    *v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S.

4    81 (1996)).  However, an officer must have the opportunity to intercede before he

5    may be held liable under this theory.  *Id.* at 1289-90.

6         The Court has found that Plaintiffs' only actionable civil rights violations in

7    this case stem from Plaintiffs' claim that Detective Akins employed judicial

8    deception in obtaining the warrant to search Plaintiffs' home for evidence of drug

9    trafficking.  Plaintiffs have not shown that the other Defendants subject to this

10   motion had an opportunity to intercede.  The record establishes that only Detective

11   Akins, Detective Negrete, and Ms. Murphy played a role in obtaining the search

12   warrant.  Detective Negrete is not subject to the instant motion for summary

13   judgment.  In addition, Plaintiffs have not provided any evidence to support that

14   Ms. Murphy would have known that the affidavit contained deliberate or reckless

15   falsifications or omissions.  Therefore, Defendants are entitled to summary

16   judgment on Plaintiffs' claims that some officers failed to prevent civil rights

17   violations by other officers.  *See Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d

18   1022, 1029-30 (9th Cir. 2002) (holding that line officers could not be held liable

19   under a theory of failing to intercede where they could not have known that a

20   warrant was defective).

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 50

**H. Plaintiffs' *Monell* claim against City of Grandview**

Municipalities are included as "persons" to whom § 1983 applies and thus may be held liable for causing a constitutional deprivation. *Monell*, 436 U.S. at 690. However, the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). Instead, liability will attach to a municipality only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. The "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original).

In their opposition to summary judgment, Plaintiffs request that the Court delay deciding summary judgment on their *Monell* claim so that they may depose Grandview's police captain and conduct a Civil Rule 30(b)(6) deposition of the City of Grandview. Civil Rule 56(d) allows the court to defer consideration of a motion for summary judgment or allow time to take discovery, but only where a nonmovant submits an affidavit or declaration setting forth specific reasons why it cannot present facts essential to justify its opposition to summary judgment.

1    Plaintiffs did not submit a declaration or affidavit in support of their request

2  that the Court defer ruling on their *Monell* claim.  Moreover, Plaintiffs have had

3  ample time to conduct discovery on their *Monell* claims in this case.  Although the

4  Court entered an order staying discovery as to the individual officer defendants

5  until it could resolve the issue of the officers' qualified immunity, the Court

6  explicitly held that discovery was not stayed as to the City of Grandview and

7  Plaintiffs' *Monell* claim against that entity.  ECF No. 44, at 7-8.

8    Because Plaintiffs have not submitted a declaration as required by Civil Rule

9  56(d), the Court finds no justification for delaying decision on Plaintiffs' *Monell*

10  claim.  Plaintiffs have not produced any evidence pointing towards an official

11  policy or custom on the City of Grandview that caused the alleged constitutional

12  deprivations.  Therefore, summary judgment is appropriate on Plaintiffs' *Monell*

13  claim against the City of Grandview.

14    Accordingly, **IT IS HEREBY ORDERED** that the City and County

15  Defendants' Motion for Summary Judgment, **ECF No. 79**, is **GRANTED IN**

16  **PART and DENIED IN PART**.  Summary Judgment is granted as to all claims

17  against all "City and County Defendants" except Detective Akins.  Summary

18  Judgment is further granted as to all claims against Detective Akins except for

19  Plaintiffs' claims based on Detective Akins' act of obtaining a warrant to search

20  their home for marijuana trafficking and for malicious prosecution on the charge of

marijuana trafficking.  The Claims remaining against Detective Akins consist of parts of Plaintiffs' First, Third, and Fifth Claims for Relief in Plaintiffs' Amended Complaint, ECF No. 3.

**IT IS FURTHER ORDERED** that the stay of discovery previously entered by the Court, **ECF No. 44**, is lifted regarding Plaintiffs' claims that have survived summary judgment.

The District Court Clerk is directed to enter this Order, enter judgment accordingly, terminate all defendants in this cause **except Defendants Detective Akins** and **Detective Negrete** and provide copies to counsel.

**DATED** this 26th day of September 2013.


_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING IN PART CITY AND COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 53